## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **COURTNEY THOUVENELL,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:18-CV-2113-JAR-KGG** |
| **CITY OF PITTSBURG, KANSAS; MELINDA HULVEY, in her individual and official capacities; JESSE DAVIS, in his individual and official capacities; and JOHN and JANE DOES, in their individual and official capacities,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiff Courtney Thouvenell filed this removal action against Defendants City of Pittsburg, Kansas; Melinda Hulvey, in her individual and official capacities; Jesse Davis, in his individual and official capacities; and John and Jane Does, in their individual and official capacities, arising out of Plaintiff's arrest in Pittsburg, Kansas on August 26, 2017. Before the Court is Defendants' Motion to Dismiss Official Capacity Claims (Doc. 5), in which they argue Plaintiff's official capacity claims against the individual Defendants are duplicative of her claims against the City of Pittsburg, and that Defendant Davis has no official capacity.[1] The matter is fully briefed and the Court is prepared to rule. For the reasons stated below, the Court grants Defendants' motion to dismiss.

### I.    Legal Standards

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level"

---

[1]Doc. 5 at 1.

and must contain "enough facts to state a claim to relief that is plausible on its face."[2] "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[4] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[5] Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[7] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[8] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[9] "A claim has facial plausibility when the plaintiff pleads factual content

---

[2]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[3]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7]*Id.*

[8]*Id.* at 679.

[9]*Id.*

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

## II.     Factual Allegations

The following factual allegations are drawn from Plaintiff's Petition and are assumed true for purposes of this ruling.  On or about August 26, 2017, at approximately 12:30 a.m., Plaintiff Courtney Thouvenell's landlord called the Pittsburg Police Department to report a disturbance at Plaintiff's residence.  Plaintiff and her fiancé told the officers they had argued, but no abuse occurred.  The officers said the standard policy and procedure when police are called for suspected domestic violence is to take at least one person into custody.  Plaintiff was then arrested for domestic battery against her fiancé.  Defendant Jesse Davis, who was provisionally certified as an officer with the Pittsburg Police Department, drove Plaintiff to the Crawford County Jail.  Davis was not fully certified and had not received training from the Kansas Law Enforcement Training Academy.

Davis transported Plaintiff to jail by himself, with no supervision.  During the thirty-minute transport, Davis showed Plaintiff naked pictures of himself and of other women on his cell phone.  He then asked if he could see Plaintiff's breasts.  Davis told her "he had to" touch her breasts and said if she let him he would help her by altering his report and talking to the prosecutor about dropping the charges.[11]  Plaintiff felt coerced and thus lifted her shirt, allowing Davis to grope her.  For the rest of the transport, Davis continued to inappropriately touch Plaintiff and make crude statements to her.

---

[10]*Id.* at 678.

[11]Doc. 12-1 at 5.

Davis's vehicle did not have audio or video recording devices, but Plaintiff's friend was on a Facebook Messenger call with Plaintiff the entire time, totaling about forty-seven minutes.[12] Plaintiff and Davis were unaware of this, as Plaintiff's call to her friend through the Facebook Messenger app was accidental. During the call, four people heard all or part of what was said during the transport. Plaintiff's friend called the police and reported what she heard. When Plaintiff arrived at the Crawford County jail, she was not offered medical assistance. The domestic violence charges against Plaintiff were dismissed and Davis was fired. As a result of this event, Plaintiff suffered economic loss and severe emotional distress.

At all relevant times, Defendant Melissa Hulvey was the Chief of Police for the City of Pittsburg Police Department. Plaintiff is unaware of the true names of the John and Jane Does, but asserts they "are or were employed by the city; were supervisors of Davis, policymakers of the Police Department, or officers present when Thouvenell was arrested; and that said defendants' wrongful actions caused Thouvenell's injuries."[13] Plaintiff alleges what happened to her is an example of a widespread problem. She claims that "the City, Hulvey, and Does within the Police Department have allowed a culture of sexual misconduct to develop and persist within the police department."[14]

## III. Discussion

Defendants move to dismiss the official capacity claims against Hulvey, Davis, and the Does, arguing they are duplicative of the claims against the City and that Davis has no official capacity with the City because he has been fired. Plaintiff responds that the claims are not duplicative because "the scope of recoverable damages against Hulvey and Davis in their official

---

[12] *Id.*

[13] *Id.* at 2.

[14] *Id.* at 6.

capacities is broader than the scope of recoverable damages against the City," and that Davis may be sued in his official capacity because he was employed by the City at the time of Plaintiff's arrest.[15]

District courts have discretion to dismiss duplicative claims unless they address two separate wrongs.[16]  When a plaintiff sues a government employee in his or her official capacity, the plaintiff pleads an action against the government employer.[17]  In *Kentucky v. Graham*, the Supreme Court held that "as long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than a name, to be treated as a suit against the entity."[18]  Thus, while a damages award against an official in his individual capacity can only be executed against the official's personal assets, damage awards in an official capacity suit must come from the government entity.[19]

Plaintiff asserts multiple  claims under 42 U.S.C. § 1983.  In Count I, Plaintiff seeks to hold the City liable for violating her Fourteenth Amendment right to bodily integrity.  In Count II, Plaintiff seeks to hold Hulvey and the Doe Defendants responsible in both their individual and official capacities for violating her Fourteenth Amendment right to bodily integrity.  In Count IV, Plaintiff seeks to hold the City responsible for her unlawful arrest.  In Counts V and VI, Plaintiff seeks to hold Davis, Hulvey, and the Doe Defendants responsible for her unlawful arrest in their individual and official capacities.[20]  Because official capacity suits are treated as suits

---

[15]Doc. 14 at 2–3.

[16]*Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1117–18 (10th Cir. 2004).

[17]*Monell v. N.Y. City Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978)).

[18]473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)).

[19]*Id.*

[20]Counts VII–XII allege state law claims.

against the entity, Plaintiff's claims against the individuals in their official capacity are duplicative of the claims against the City alleging the same violations.[21]

Plaintiff contends that the official capacity claims in this case are not redundant because the scope of recoverable damages for the official capacity claims against the individual Defendants is broader than the scope of recoverable damages against the City.  She asserts that while punitive damages are not permitted in suits against municipalities, they are available against individuals sued in their official capacity, relying on *Youren v. Titnic School District*, where the Tenth Circuit found sufficient evidence to warrant a trial on punitive damages against an individual defendant in her official capacity.[22]  In *Youren*, the question was not whether the claims were duplicative, but whether the official capacity damages amounted to "impermissible double recovery."[23]  Additionally, the defendant was sued only in her official capacity, not as an individual.  The Tenth Circuit stated, "the fact that municipalities are immune from punitive damages does not, however, mean that individual officials sued in their official capacity are likewise immune."[24]

Courts in this district have routinely dismissed official capacity claims for being redundant and rejected the argument that official capacity claims should not be dismissed when the plaintiff seeks punitive damages.[25]  Plaintiff argues these decisions conflict with the Tenth

---

[21]*Graham*, 473 U.S. at 167 n.14; *Monell*, 436 U.S. at 691 n.55; *Moore v. Bd. of Cty. Comm'rs of Cty. of Leavenworth*, 470 F. Supp. 2d 1237, 1255 (D. Kan. 2007).

[22]343 F.3d 1296, 1309 (10th Cir. 2003).

[23]*Id.* at 1306.

[24]*Id.* at 1307.

[25]*See Smith v. Stuteville*, No. 14-2197-JWL, 2014 WL 3557641, at *4 n.1 (D. Kan. July 18, 2014) (holding that individuals sued in their official capacities are immune from punitive damages); *see also Quintero v. City of Wichita*, No. 15-1326-EFM-GEB, 2016 WL 5871883, at *1 (D. Kan. Oct. 7, 2016) (explaining plaintiff had an avenue for punitive damages through the individual capacity claim and noting criticism of the *Youren* decision by the Tenth Circuit and several district courts).

Circuit's decision in *Youren* upon which Plaintiff relies.  However, the Tenth Circuit itself agrees that *Youren* is "an anomalous outlier," and recognizes that courts within the Tenth Circuit ignore *Youren* when dismissing punitive damages claims in official capacity § 1983 suits.[26]  In *Cross Contintent Development, LLC v. Town of Akron, Colorado*, the Tenth Circuit noted the "inescapable" conclusion that individuals sued in their official capacity are immune from punitive damages under Supreme Court precedent.[27]  Moreover, even if *Youren* continues to be good law, it is distinguishable.  Unlike in *Youren*, Plaintiff alleges individual capacity claims against all of the individually-named Defendants.

Plaintiff asserts the same § 1983 claims against the City and the individual Defendants in their official capacities.  Therefore, Plaintiff's direct claim against the City and claims against Hulvey, Davis, and the Doe Defendants in their official capacities are duplicative.  Plaintiff's reliance on *Youren* to support an official capacity punitive damages claim is unavailing.  The official capacity claims against these Defendants therefore must be dismissed.

Because the official capacity claim against Davis must be dismissed as duplicative of the claims against the City, it is unnecessary to address whether Davis can be sued in his official capacity even though he is no longer employed by the City.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss Official Capacity Claims (Doc. 5) is **granted**.  Plaintiff's § 1983 official capacity claims against Defendants Hulvey, Davis, and Does are hereby dismissed.

**IT IS SO ORDERED.**

---

[26]*Cross Continent Dev., LLC v. Town of Akron, Colo.*, 548 F. App'x 524, 531 (10th Cir. 2013); *see e.g.*, *N.F. ex rel. M.F. v. Albuquerque Pub. Sch.*, No. 14-CV-699 SCY/SMV, 2015 WL 13662805, at *3 (D.N.M. May 4, 2015) (explaining *Youren* has been often criticized and "never, to this Court's knowledge, endorsed").

[27]548 F. App'x at 531.

Dated: June 21, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE